**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-2732

_____

UNITED STATES OF AMERICA

v.

AMADU BARRY,
                    Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-14-cr-00272-007)
District Judge:  Honorable Timothy J. Savage

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on October 5, 2017

Before:  AMBRO, KRAUSE, and SCIRICA, *Circuit Judges*

(Opinion filed: November 9, 2017)

_____

OPINION[*]

_____

KRAUSE, *Circuit Judge*.

Amadu Barry appeals an order of the District Court revoking his supervised

release and imposing a sentence of incarceration followed by a new term of supervised

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

release.  He claims that the District Court committed procedural error at sentencing when it failed to consider that, per the Sentencing Guidelines, supervised release ordinarily is inappropriate for non-citizen defendants like Barry who are likely to be removed from the United States after release from incarceration.  *See* U.S.S.G. § 5D1.1(c).  We will affirm.

I.

Barry is a citizen of Liberia who, at all times relevant, was living in the United States as a lawful permanent resident.  In January 2015, he pleaded guilty to two counts of a superseding indictment charging him with credit card fraud, one count charging him with attempted credit card fraud, and one count charging him with conspiracy, all in violation of federal law.  The District Court imposed a sentence of time served, plus four concurrent, three-year terms of supervised release.  Conditions of Barry's supervised release included that he refrain from committing new crimes and that he "report to the probation officer in a manner and frequency directed by the court or probation officer." JA 3.

Around seven months into his terms of supervised release, Barry was arrested in Delaware County, Pennsylvania, by local law enforcement for possession of marijuana and on suspicion of using fraudulent credit cards.  Soon after, Barry failed to report to his federal probation officer to discuss the new arrest.  Consequently, the probation officer lodged a petition with the District Court charging Barry with two violations of his supervised release.[1]  It conducted a hearing, at the close of which it sustained both

---

[1] In response, the District Court issued a bench warrant.  When the U.S. Marshals arrested Barry pursuant to that warrant, they found in his possession "prepaid visa cards

2

charges, revoked Barry's supervised release, and imposed a Guidelines-range sentence of 14 months of imprisonment, to be followed by a new, 20-month term of supervised release.[2] Barry appealed.

## II.[3]

Barry argues on appeal that it was "procedurally unreasonable" for the District Court to impose "a new term of supervised release in light of U.S.S.G. § 5D1.1(c)." Appellant's Supp. Br. at 2. Section 5D1.1(c) provides that a "court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment." The District Court did not address that presumption against supervised release, and Barry contends that the District Court thus contravened *United States v. Azcona-Polanco*, 865 F.3d 148 (3d Cir. 2017), which issued during the pendency of this appeal. There we held that "a district court must 'explain and justify' the imposition of supervised release on a deportable immigrant"; while explicit citation of Section 5D1.1(c)

---

with no names on them," cash, and drugs. JA 29.

[2] At the hearing, Barry admitted that he did not report to the probation officer as directed, and there was essentially unrebutted testimony that Barry was, at the time of the underlying arrest, in possession of drugs and stolen or counterfeit access devices. In addition, the probation officer testified that Barry had been prosecuted on similar charges in Chester County, Pennsylvania, and recently had failed to appear in court there on a suspected violation of state probation.

[3] The District Court had jurisdiction under 18 U.S.C. §§ 3231 and 3583(e). We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

is not required, the district court at a minimum must directly address the substance of that Guideline. *Id.* at 153 (citation omitted).

A determination that a district court committed procedural error at sentencing— *e.g.,* "failing to adequately explain the chosen sentence"—typically would result in a remand for resentencing. *Azcona-Polanco*, 865 F.3d at 152. But here the lone issue raised by Barry on appeal was not first presented to the District Court. As a result, he must run the gauntlet of plain error review. *See* Fed. R. Crim. P. 52(b); *cf. United States v. Flores-Mejia*, 759 F.3d 253, 255 (3d Cir. 2014) (en banc). "The plain error test requires (1) an error; (2) that is 'clear or obvious' and (3) 'affected the defendant's substantial rights, which in the ordinary case means he or she must 'show a reasonable probability that, but for the error,' the outcome of the proceeding would have been different.'" *Azcona-Polanco*, 865 F.3d at 151 (citation omitted). If that test is satisfied, we may correct the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.*

### III.

We agree with Barry that he was made to serve a new term of supervised release without an adequate explanation by the District Court of its divergence from the Section 5D1.1(c) presumption.[4] But even if that constituted clear or obvious error, *cf. id.* at 154,

---

[4] Section 5D1.1.(c), which was neither discussed by the parties at sentencing nor considered at all by the District Court, applies to Barry given his immigration status, criminal history, and other information available in the Presentence Investigation Report. In *Azcona-Polanco*, we observed that, "[i]n adopting Section 5D1.1(c), the Sentencing Commission noted that 'recent changes in our immigration law have made removal nearly an automatic result for a broad class of noncitizen offenders." 865 F.3d at 152

we will affirm because Barry has failed to show that the error affected his substantial rights.

The transcript of the revocation hearing reflects that, when it came time to fashion an appropriate sentence, the District Court was deeply concerned by Barry's apparent inability to follow the law and the concomitant danger he posed to the community. The District Court thus enumerated Barry's "five prior adult convictions ranging from fraud, assault, retail theft and [unlawful] possession of access devices," and emphasized the need to "protect the public" from Barry's "further crimes" because he had "no respect for the law, absolutely none." JA 40. Such concerns are properly considered by a district court in the sentencing calculus, generally, and in deciding whether to impose a term of supervised release, specifically. *See* 18 U.S.C. §§ 3553(a)(2)(C) and 3583(c).

As we recognized in *Azcona-Polanco*, Section 5D1.1(c) advises against supervised release for a deportable-immigrant defendant in the ordinary case because post-incarceration supervision will be "unnecessary"; that is, the defendant will be removed from the United States and, if he were to return without authorization, "the need to afford adequate deterrence and protect the public ordinarily is served by a new prosecution." 865 F.3d at 152 (quoting U.S.S.G. § 5D1.1(c), cmt. n.5). That said, the commentary also provides that a district court should nonetheless consider imposing a term of supervised release on a deportable immigrant if doing so will provide "an added measure of deterrence and protection based on the facts and circumstances of a particular case."

---

(citation omitted). Indeed, the Government advises that proceedings to remove Barry from the United States are underway.

U.S.S.G. § 5D1.1(c), cmt. n.5. Either way, the district court has discretion whether to follow Section 5D1.1(c). *See United States v. Dominguez-Alvarado*, 695 F.3d 324, 329 (5th Cir. 2012).

Here the record reflects that, when the District Court sentenced Barry, he was not in removal proceedings or otherwise in the custody of the Department of Homeland Security (DHS). And no immigration detainer had been or was slated to be lodged such that the District Court could and should have predicted that Barry would be supervised by DHS *immediately* after serving his new term of incarceration. That is significant because Barry at times could be evasive. According to the probation officer, for example, multiple attempts to contact Barry after his arrest in Delaware County proved unsuccessful because his "cellular phone is no longer active and his father and girlfriend stated by telephone that they do not know his whereabouts." JA 8; *see also* JA 40 (District Court: noting that Barry "disappeared . . . [and] did not appear at court hearings" after his release from incarceration). Given those facts, along with the District Court's stated desire to protect the public from Barry's recidivism and the Guideline commentary discussed above, we discern no "reasonable probability" that the District Court would have declined to impose a term of supervised release even had it engaged with the substance of Section 5D1.1(c).

\*     \*     \*

For the foregoing reasons, we will affirm the judgment of the District Court.